UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| UNITED STATES of AMERICA *ex rel.* TRACY CONROY, PAMELA SCHENK and LISA WILSON, | ) ) ) |
| | ) Case No. 3:12-cv-00051 RLY-DML |
| Plaintiffs/Relators, | ) |
| v. | ) |
| | ) |
| SELECT MEDICAL CORPORATION, SELECT SPECIALTY HOSPITAL - EVANSVILLE, and DR. RICHARD SLOAN, | ) ) ) ) |
| | ) |
| Defendants. | ) |

_____

**UNITED STATES' RESPONSE IN SUPPORT OF ITS OPPOSITION TO DISMISSAL
OF CERTAIN CLAIMS ON THE BASIS OF THE PUBLIC DISCLOSURE BAR**

The United States files this Brief responding to Defendant Select Medical's "Brief in

Response to the United States' Opposition to Dismissal of Certain Claims on the Basis of Public

Disclosure Bar" (Doc. 153). The statute at issue in this case, the False Claims Act, is the

Government's primary tool for recovering damages that it suffers due to fraud in government

programs. The statute permits both the Government and private party *qui tam* relators to file suit

to recover damages lost due to fraud and false claims. The Government at all times remains a

real party in interest in any *qui tam* suit, whether it intervenes in the action or chooses to allow a

*qui tam* relator to prosecute the case on its behalf. *United States ex rel. Lusby v. Rolls Royce

Corp.,* 570 F.3d 849, 852 (7th Cir. 2009); *United States ex rel. Hyatt v. Northrop Corp.*, 91 F.3d

1211, 1214 (9th Cir. 1996). The Government files this brief because it has a significant interest

in the proper interpretation of the circumstances in which a defendant may interpose an objection that a *qui tam* case is parasitical and may move to dismiss on this basis.

## SUMMARY OF ARGUMENT

In certain cases, Congress has deemed private *qui tam* suits to be "parasitical" in the sense that the information at the heart of the lawsuit is already in the possession of the Government, as evidenced by its disclosure from within the Government to the public, or readily available to the Government from the news media, and there is therefore no need for a private person to pursue a False Claims Act recovery on behalf of the Government. This is true in particular where that private person has played no role in contributing to the Government's information. Noting that motions based on alleged parasitism were filed by defendants in virtually every *qui tam* case and that some courts were inappropriately interpreting the statute's public disclosure anti-parasitism provision in an overly-expansive way that prevented meritorious cases from going forward, Congress in 2010 gave the Government an important role to play in determining whether a *qui tam* lawsuit is parasitical vis-à-vis the Government and whether a defendant should be permitted to raise this type of defense. Under a 2010 amendment to the False Claims Act, if the Government concludes that the public interest may be served by prohibiting the private relator from continuing with the *qui tam* action, it can acquiesce in a defendant's motion to dismiss by withholding any objection to the lawsuit's dismissal. In such a case – where the defendant has fulfilled a condition precedent, and obtained the Government's acquiescence in the dismissal motion – the defendant is free to move to dismiss the action on the grounds that it is parasitical vis-à-vis information that was already available to the Government. Congress passed this amendment as a compromise after considering bills that would have eliminated any role whatsoever for defendants in deciding whether *qui tam* suits were parasitical;

the legislative history surrounding these original bills note that the "best source" for determining whether a case is parasitic is the Government itself, and the prior bills would have left such motions entirely in the hands of the Government.

Under the 2010 amendment as passed, if the Government believes that such a case is *not* parasitical with respect to information available to the Government, by statute the Government may withhold its acquiescence from any motion to dismiss, and it alerts the Court to its position by affirmatively objecting to any dismissal motion. This is what the Government has done here. Because the Government has objected, Select Medical now has no standing to move to dismiss: it has not fulfilled the statutory condition precedent of obtaining the Government's acquiescence in a possible dismissal and it may therefore not proceed with its motion.

In containing such a condition precedent, the False Claims Act amendment of 2010 is no different in kind from the provision in the Act that conditions a *qui tam* relator going forward in the first instance prior to service upon any defendant upon government acquiescence. The Government as real party in interest may choose to simply dismiss the *qui tam* case at the outset, a decision that is committed to the Government's discretion based on an assumption that the Executive is acting rationally and in good faith, just as Government decisions not to prosecute in the first instance are unreviewable. Nor is conditioning a defendant's public disclosure motion on Government acquiescence different in kind from the provisions of the Act that condition court approval of, for example, settlements and dismissals by relators, upon government acquiescence. Nor is it any different from scores of other statutory provisions that preclude court consideration of certain claims or defenses unless the party seeking to assert the claim or defense has fulfilled a required statutory condition.

Select Medical's major argument to the contrary is that section 3730(e)(4) is "jurisdictional" and that conditioning a defense motion under this section on government acquiescence in some way improperly forces the courts to keep jurisdiction of cases they would otherwise dismiss. As both the legislative history to prior versions of the bill ultimately enacted and all court of appeals decisions to consider this issue have held, however, section 3730(e)(4) after the 2010 amendment is no longer "jurisdictional." Because the Government's non-acquiescence in the dismissal of this case does not therefore implicate the Court's subject matter jurisdiction, there is no possible separation of powers concern. And even if the provision at issue were jurisdictional, conditioning a defendant's ability to file a motion on the government's lack of objection does not implicate the jurisdiction of the federal courts in any way.

In sum, Select Medical's arguments should be rejected and, because the Government has stated that the action is not parasitical and has withheld its consent to Select Medical's motion to dismiss on this ground, that motion should be struck.

## STATUTORY BACKGROUND

The False Claims Act is the Government's primary method to recover money lost due to fraud. Either the Department of Justice or a private party "relator" (*qui tam* plaintiff) may bring a lawsuit under the Act against individuals or entities who have submitted false claims. Before proceeding with the suit, the *qui tam* plaintiff must disclose the information on which the claim is based to the Government, and the Government has an opportunity decide whether to intervene and prosecute the case itself or to decline to intervene and allow the *qui tam* plaintiff to pursue the matter on its behalf. 31 U.S.C. § 3730(b). In either case, the Department of Justice maintains control over the litigation: it may dismiss the *qui tam* case, it may pursue an alternate remedy, or it may intervene and assume primary responsibility for the case. If there is any recovery, either

4

by the Government after intervening or by the *qui tam* plaintiff, then the private relator is awarded a substantial share, normally between 15% and 30% of the total recovery depending on whether the Government intervened and the private person's contributions. *See generally* 31 U.S.C. § 3730.

As originally enacted in 1863, the False Claims Act contained no limitations on the sources of information for private party suits. As the Supreme Court found in *U.S. ex rel. Marcus v.* Hess, 317 U.S. 537, 545-48 (1943). the original Act seemed to permit a private party simply to copy a Government indictment and use that as the basis for a civil suit. In such cases, the Government, at least in theory, was perfectly capable of obtaining a recovery on its own. Diverting a substantial portion of the Government's recovery to a private party who managed to get to the courthouse with the civil complaint before the Government did, however, could be considered an unnecessary waste of resources that would otherwise flow entirely to the Government.

To address the problem of suits that were deemed parasitical because the Government already had the information and could pursue it, Congress passed an amendment to the Act in 1943 that provided that "[t]he court shall have no jurisdiction to proceed … whenever it shall be made to appear that such suit was based upon evidence or information in the possession of the United States… at the time such suit was brought." 57 Stat. 608, codified at 31 U.S.C. 232(C); *see United States v. Pittman*, 151 F.2d 851, 854 (5th Cir. 1945), *cert. denied*, 328 U.S. 843 (1946); *United States v. Rippetoe*, 178 F.2d 735, 736 (4th Cir. 1949) (Congress' concern with this amendment was to address parasitism). This new restriction was specifically couched as a jurisdictional limitation ("the court shall have no jurisdiction to proceed….").

The 1943 amendment had the unintended effect of drying up *qui tam* litigation. *See* H. Rep. No. 97, 111th Cong., 1st Sess. *3 (2009) (noting that after 1943, only about 6-10 *qui tam* cases were filed a year nationally). The courts interpreted the new provision to require dismissal of a relator's action even if the information was in the possession of the Government solely because the relator gave it to the Government in the first instance, and even if the Government was not acting on the information. *E.g.*, *Pettis ex rel. U.S. v. Morrison-Knudsen Co.*, 577 F.2d 668, 672-73 (9th Cir. 1978). This interpretation created a Hobson's choice for prospective relators: these good citizens had to choose between coming forward to the Government early with information about fraud in advance of filing their action, or delaying this disclosure until they were ready to file their suit and thus allowing the fraud to continue, lest they later be barred because by coming forward early they placed their information in the hands of the Government. Because of this interpretation and other factors, including a more limited reward provision, the *qui tam* provisions remained mostly moribund until a substantial overhaul of the statute in 1986.

In 1986, Congress revamped the jurisdictional bar formerly contained in section 232(C). It kept the jurisdictional nature of the bar but ensured that Government information would not bar the relator unless the Government was already acting or likely to act on the information as demonstrated by the fact that the information had been publicly disclosed. Under the 1986 amendment, the provision was recodified into section 3730(e), which read as follows:

> (4)(A) No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless … the person bringing the action is an original source of the information.

Furthermore, the revised bar authorized a relator to proceed even if the relator's allegations were publicly disclosed, as long as the relator was the original source of his or her allegations. An "original source" was defined as "an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information." 31 U.S.C. § 3730(e)(4)(B).

Following the 1986 amendments, courts continued to interpret this provision in ways that Congress found to be overly restrictive, including "[u]sing the public disclosure bar to deny a reward to a *qui tam* relator despite the objections of the United States." *See* S. Rep. No. 507, 110th Cong., 2d Sess. *22 & n. 80 (2008) (referring to the decision in *Rockwell Int'l Corp. v. U.S.*, 549 U.S. 457 (2007)). As Congress observed, "in virtually all FCA cases" that the Government declined to pursue that went forward, the defendants filed motions to dismiss the *qui tam* action on "public disclosure" grounds, *See* H.Rep. No. 97, 111th Cong., 1st Sess. *24 (2009), and because the provision was stated to be jurisdictional, those motions could be filed at any time. As the Senate Committee on the Judiciary observed in S. Rep. No. 507, *supra*, "[t]he result of these interpretations has been significant litigation, delays in settling FCA cases with clear violations of law, and, regrettably, the dismissal and presumptive barring of meritorious claims brought by qui tam relators. These decisions have created a chilling effect on relators coming forward with claims…" *Id.*

In the three years from the Supreme Court decision in *Rockwell*, which the congressional report criticized because the Court dismissed a *qui tam* case on jurisdictional grounds after many years of litigation even after the Government had intervened in the action, and leading up to the 2010 amendment, Congress conducted several hearings in which members of Congress urged

7

that body to address these overly expansive decisions. Legislators introduced H.R. 4854, the "False Claims Act Correction Act of 2007"; S. 2041, the "False Claims Corrections Act of 2007"; another version of S. 2041, the "False Claims Corrections Act of 2008" (*see* S. Rep. No. 507, 110th Cong., 2d Sess. *15 (2008)); and H.R. 1788, the "False Claims Correction Act of 2009." These bills would have barred defendants entirely from filing any motions based on parasitism, allowing only the Government to file such motions, H. Rep. No. 97, 111th Cong., 1st Sess. *14 (2009), section by section analysis of section 3(d) of H.R. 1788 (2009); S. Rep. No. 507, 110th Cong., 2d Sess. *22, section by section analysis of section 4(b) of S. 2041. As noted in the legislative history, it made sense to have the Government exclusively control decisions on whether to challenge parasitic suits, because it is the Government that is the "**best** source for determining whether a relator has provided meaningful, new information to the Government." Moreover, it is "[o]nly the Government" that has a true "interest in ensuring that its resources are not squandered on litigation that does no more than duplicate a fraud matter already under investigation." S. Rep. No. 507, *supra* at *24 (emphasis supplied).

In these bills, the anti-parasitism provision was reframed as a basis to move to dismiss the action, and was specifically stated to no longer be a jurisdictional bar: "The provision **converts** the public disclosure bar **from a jurisdictional bar** that may be invoked by either the defendant or the Government, **to a basis for a motion to dismiss** that may only be filed by the Government."  S. Rep. No. 507, *supra* at *24 (emphasis supplied).

While these particular bills were not enacted, in 2010, Congress did legislate a change to the anti-parasitism provision as part of the Patient Protection and Affordable Care Act, Pub. L. No. 111-148, Title X, section 10104(j)2), 124 Stat. 901 (Mar. 23, 2010), and in so doing it incorporated several of the components of the previously introduced bills. Most notably,

Congress removed the phrase "No court shall have jurisdiction over an action under this section," and substituted for the section the following:

> "**(4)(A)** The court **shall dismiss** an action or claim under this section, **unless opposed by the Government,** if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed--
>
> > **(i)** in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party;
> > **(ii)** in a congressional, Government[2] Accountability Office, or other Federal report, hearing, audit, or investigation; or
> > **(iii)** from the news media,
>
> unless the action is brought by the Attorney General or the person bringing the action is an original source of the information." (Emphasis supplied.)

The new public disclosure provision thus included the change from a jurisdictional to a non-jurisdictional bar that had been incorporated into the earlier bills, and it gave the Government the exclusive ability to decide whether a public disclosure challenge to a *qui tam* suit should be filed in the first instance just as had the earlier bills. Unlike the earlier bills, however, the new provision did give defendants a continuing role to play in public disclosure challenges but only to the extent that the Government authorized this type of challenge. This change was introduced and then passed effective March 23, 2010, without additional reports or hearings, see 155 Cong. Rec. S13490-02 (Dec. 19, 2009); 156 Cong. Rec. H1891-01 (Mar. 21, 2010).[1]

While Congress removed the jurisdictional language from Section 3730(e)(4), it left unchanged several provisions that continued to expressly use "jurisdictional" language:  one removing jurisdiction over certain actions by members of the military, section 3730(e)(1), and a

---

[1]  The amendments to Section 3730(e)(4)(A) are not retroactive and thus do not apply to claims that accrued prior to the effective date of March 23, 2010, *see Graham County Soil and Water Conservation Dist. v. U.S. ex rel. Wilson*, 559 U.S. 280, 283 n. 1 (2010).

second removing jurisdiction over certain actions against Members of Congress, members of the judiciary, and senior executive branch officials, section 3730(e)(2).

## PROCEDURAL HISTORY

Relators filed this case in September 2012, alleging that Select Medical violated the False Claims Act through its medically unnecessary admissions of patients to its Long Term Acute Care facilities, and through fraudulent attempts to maximize reimbursements through manipulation of patients' lengths of stay and falsification of diagnoses. (Doc. 13, 128). The relators' claims arose both before and after the effective date of the 2010 amendments to the public disclosure bar. On December 18, 2015, Select Medical moved to dismiss the relators' Second Amended Complaint (Doc. 139) on grounds, *inter alia,* that the court lacked subject matter jurisdiction, as to both claims that arose prior to March 23, 2010, and claims that arose after that date (Doc. 141). On February 1, 2016, the Government filed a "Notice of Opposition to Dismissal of Certain Claims occurring on or after March 23, 2010 on the Basis of the Public Disclosure Bar" (Doc. 144), which was limited to opposition to dismissal of claims accruing after March 23, 2010.

## ARGUMENT

I.   THE NEED FOR GOVERNMENT ACQUIESCENCE AS A CONDITION PRECEDENT TO ANY PUBLIC DISCLOSURE MOTION RAISES NO SEPARATION OF POWERS ISSUES

Select Medical's argument is that the public disclosure provision used to be a jurisdictional bar and it must still be so, essentially solely because the section in which the provision is found states as a title, "Certain Actions Barred." (Doc. 153 at 18). Having assumed that the provision must still be a jurisdictional bar, Select Medical argues that to allow the federal government to augment the Court's jurisdiction by affirmatively identifying non-parasitic actions

that should not be dismissed, is either to interfere with the powers of the Judiciary or to augment

the powers of the Executive Branch at the expense of the Judiciary, or both, implicating

separation of powers concerns.  At the end of its brief, Select Medical only halfheartedly argues

that the provision still implicates constitutional concerns even if found not to be jurisdictional,

providing little legal authority for such an argument. None of these arguments have merit.

A. *The Public Disclosure Provision Is No Longer Jurisdictional*

In 2010, Congress removed the jurisdictional language from the

 public disclosure provision of the False Claims Act, section 3730(e)(4), while simultaneously

keeping that language in other subsections of section 3730(e). Every Court of Appeals to

consider the issue to date has found that the provision is no longer jurisdictional. This is in part

because "changes in statutory language" of this type "generally indicate an intent of Congress to

change the meaning of the statute." *DirectTV, Inc. v. Brown*, 371 F.3d 814, 817 (11th Cir. 2004).

Furthermore, where, as in this case, there has been a "deliberate selection of language so

differing from that used in the earlier acts," there really can be no doubt that "a change in law

was intended." *Brewster v. Gage*, 280 U.S. 327, 337 (1930).

Because the language is clear, there is no need to search for legislative history to clarify

any ambiguity. Nevertheless, the applicable legislative history makes clear that Congress

actively intended to change this jurisdictional provision to a nonjurisdictional one. Congress was

frustrated that the formerly jurisdictional nature of the provision had created opportunities for

courts to fashion precedent contrary to congressional intent. In the proposed bills leading up to

the 2010 amendment, the public disclosure provision was expressly reformulated as a basis to

move to dismiss the action. In those bills, it was specifically stated to no longer be a

jurisdictional bar: "The provision **converts** the public disclosure bar **from a jurisdictional bar**

11

that may be invoked by either the defendant or the Government, **to a basis for a motion to dismiss** that may only be filed by the Government."  S. Rep. No. 507, 110th Cong., 2d Sess. *24 (emphasis supplied). The same dismissal language found in S. 2041, introduced in 2007 and 2008 and discussed in S. Rep. No. 507, is also found in new section 3730(e)(4). The fact that this history is entirely consistent with the plain language of the 2010 amendment further confirms that the court should not adopt Select Medical's approach of looking for unlikely hidden meanings ostensibly concealed somewhere within this plain language.

The Supreme Court has repeatedly stated that statutory provisions should not be read as jurisdictional absent clear congressional intent. In general, if there is no jurisdictional language in a provision, the courts should not read that provision as jurisdictional. *Sebelius v. Auburn Regional Medical Ctr*, ___ U.S. ___, 133 S. Ct. 817, 824 (2013); *Gonzalez v. Thaler*, __ U.S. __, 132 S. Ct. 641, 648 (2012); *Henderson v. Shinseki*, 562 U.S. 428, 438-39 (2011); *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 163-65 (2010); *Union Pac. R.R. v. Brotherhood of Locomotive Eng'rs & Trainmen*, 558 U.S. 67, 83 (2009); *Arbaugh v. Y&H Corp*, 546 U.S. 500, 515-16 (2006). The cases require a "clear statement" or "clear indication" before a statute prescribing a precondition to bringing suit will be construed as jurisdictional. *Miller v. FDIC*, 738 F.3d 836, 844 (7th Cir. 2013) (citing cases). Where Congress in its plain language, as in this case, not only has provided no jurisdictional terminology but has actually removed the formerly existing jurisdictional terminology and substituted dismissal language, there can be no conclusion other than that the statute is no longer jurisdictional. And where, as in this case, the legislative history leading up to the statutory enactment demonstrates an affirmative intent to change the provision from a jurisdictional to a non-jurisdictional one, Select Medical's argument to the contrary begins to look farfetched.

Furthermore, the fact that there is a concatenation of provisions of different types in section 3730 under a general heading of "Certain Actions Barred" does not mean that all such provisions must necessarily be read as of the same type, as Select Medical argues. (Doc. 153 at 11). A nonjurisdictional provision "does not become jurisdictional simply because it is placed in a section of a statute that also contains jurisdictional provisions." *Sebelius v. Auburn Regional Medical Ctr*, *supra,* ___ U.S. ___, 133 S. Ct. at 825.

It is for this reason that every federal Court of Appeals to consider the nature of section 3730(e)(4) as amended, has decided that this provision is no longer jurisdictional. In *United States ex rel. Moore & Co. v. Majestic Blue Fisheries*, 812 F.3d 294, 300 (3d Cir. 2016), the Third Circuit reversed the district court, which had declared "[w]ith little analysis" that the 2010 provision was jurisdictional. The appellate court stated that "[w]e disagree and join the other circuits that have ruled that the amended version does not set forth a jurisdictional bar." *Id. Moore* followed the same three-part analysis that we set out above to conclude that the bar is not jurisdictional: first, there is no clear statement in the 2010 version of section 3730(e)(4) stating that the provision is intended to be jurisdictional; second, Congress specifically removed the former language explicitly referring to jurisdiction, showing that it intended to change the nature of the provision, and third, Congress left unchanged the jurisdictional language in neighboring provisions in section 3730(e). *Id.*[2]

In *U.S. ex rel. Beauchamp v. Academii Training Ctr.*, 816 F.3d 37, 42 (4th Cir. 2016), the Fourth Circuit stated, "Post-amendment, the public-disclosure bar is a grounds for dismissal— effectively, an affirmative defense—rather than a jurisdictional bar." *See also U.S. ex rel. May v. Purdue Pharma LP*, 737 F.3d 908, 916 (4th Cir. 2013) ("It is apparent…that the public-disclosure

---

[2]  *See also U.S. ex rel. Customs Fraud Investigations LLC v. Victaulic Co.*, 2014 WL 4375638 at *7 (E.D. Pa. 2014) ("the deliberate removal of the jurisdictional language from this subsection suggests that Congress intended to change the jurisdictional nature of the public disclosure bar").

bar is no longer jurisdictional.") In *U.S. ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805, 810 (11th Cir. 2015), the Eleventh Circuit stated that the new provision "creates grounds for dismissal for failure to state a claim rather than for lack of jurisdiction."

District courts in the Second and Sixth Circuits have similarly stated that the post-2010 version of section 3730(e)(4) is not jurisdictional in published decisions. In *United States ex rel. Chen v. EMSL Analytical, Inc.*, 966 F.Supp.2d 282, 294 (S.D. N.Y. 2013), the court noted that "[n]ot only is there no [] clear language in the present incarnation of the public disclosure bar [making the provision jurisdictional], but . . . Congress deliberately *removed* such clear language from the provision when it could have kept it in. The Court therefore holds that the public disclosure provision is no longer jurisdictional in nature…" Similarly, in *United States ex rel. Stratienko v. Chattanooga-Hamilton County Hosp. Auth.*, 958 F.Supp.2d 846, 857 n.6 (E.D. Tenn. 2013), the court stated that "the post-PPACA language still provides a basis for dismissal but that basis is no longer jurisdictional." *See also United States ex rel. Paulos v. Stryker Corp.*, No. 11-0041, 2013 WL 2666346, **3-4 (W.D. Mo. June 12, 2013) ("After the 2010 amendment, the bar is not described as jurisdictional in nature . . .post-amendment it may be that Rule 12(b)(6) applies."); *United States ex rel. Fox Rx, Inc. v. Omnicare, Inc.,* No. 1:11-cv-962, 2013 WL 2303768, *8 n. 15 (N.D. Ga. May 17, 2013) ("Effective March 23, 2010, the public disclosure bar was amended to narrow its applicability and to make it a basis for dismissal, not a jurisdictional threshold.").

The Seventh Circuit has most recently stated that it has not yet decided the issue, but it nevertheless points out, in *Cause of Action v. Chicago Transit Authority*, 815 F.3d 267 270 n.5 (7th Cir. 2016), that "the circuits that have had to determine whether the new statutory language is jurisdictional have held that the language of the 2010 amendment is **not** jurisdictional."  Select

14

Medical relies on a Seventh Circuit case decided before *Cause of Action v. Chicago Transit Authority* as standing for the proposition that the post-2010 statute is jurisdictional, *United States v. Sanford–Brown,* 788 F.3d. 696 (7th Cir. 2015). The panel in *Cause of Action* does not mention *Sanford-Brown* as precedent, perhaps because, as noted by this district in *United States ex rel. Bellevue v. Universal Health Services of Hartgrove, Inc.*, No. 11-C-5314, 2015 WL 5873292 **2-3 (N.D. Ill. Oct. 5, 2015) (appeal pending), the *Sanford-Brown* court did not have to decide whether the post-2010 amendment was jurisdictional. The case involved both pre-amendment and post-amendment conduct, and the only questions actually decided by the Court was whether there had been a public disclosure and if so, whether the relator had the independent knowledge to qualify as an "original source." The Court ultimately decided only that the relator had conceded both points – that there had been a public disclosure, and that the relator had no independent knowledge – which would have barred the relator under either the pre-2010 or the post-2010 versions of the public disclosure provision. For the proposition that section 3730(e)(4) is jurisdictional, the Court cited only a case that involved pre-amendment conduct, and as to which there was no dispute that the public disclosure bar in effect at the time was jurisdictional, *U.S. ex rel. Absher v. Momence Meadows Nursing Center, Inc.,* 764 F.3d 699, 706 (7th Cir. 2014). The *Absher* Court said that **post**-amendment conduct, had it been present in that case, might well have required a different analysis. *Id.*  In sum, any statements in *Sanford-Brown* relating to post-2010 jurisdiction were dicta.

Select Medical's reliance on *Glaser v. Wound Care Consultants, Inc.,* 570 F.3d 907, 922 (7th Cir. 2009), is similarly misplaced, since that case could not and did not address any issue

about the 2010 amendment to the public disclosure bar: it was decided in 2009, before the 2010

amendment was enacted *See*, 530 F.3d at 912-13(quoting only pre-2010 version of the statute).[3]

    Because section 3730(e)(4) is no longer jurisdictional, it does not in any way implicate

constitutional concerns about separation of powers. Although there are no published opinions

addressing Select Medical's argument that section 3730(e)(4)'s requirement of government

acquiesence implicates separation of powers concerns, in an unpublished opinion in *U.S. ex rel.*

*Griffith v. Conn,* 2015 WL 779047 *11-12 (E.D. Ky. Feb. 24, 2015) (Attachment A), the court

addresses this specific issue and rejects this very same argument. After finding that the new

public disclosure provision "is no longer jurisdictional," the court concluded that it cannot

implicate any of the separation of powers concerns raised by the defendant. "Because the bar is

no longer jurisdictional, the executive branch does not have control over the jurisdiction of the

courts. As a result, the post-PPACA [2010] public disclosure bar poses no separation of powers

concerns." *Id.* For these same reasons, Select Medical's identical argument should be rejected as

well.

    B.  *Even if 3730(e)(4) is Jurisdictional, The Government's Participation*
         *Implicates No Separation of Powers Concerns*

    The Attorney General has authority to control litigation on behalf of the

United States under Article II of the Constitution, the Take Care clause, U.S. Const. art. II,

section 3 (The President "shall take Care that the Laws be faithfully executed"). To conclude that

---

[3]  While statutory bars – even mandatory bars – may preclude the plaintiff from bringing suit or
preclude the defendant from asserting a defense, as the Seventh Circuit Court of Appeals has
repeatedly stated, they do not strip the court of subject matter jurisdiction "'to decide the case
either way.'" *Collins v. United States*, 564 F.3d 833, 839 (7th Cir. 2009) (holding that
requirement of exhausting administrative remedies under FTCA is not jurisdictional) (quoting
*The Fair v. Kohler Die & Specialty Co*., 228 U.S. 22, 25 (1913)); *Massey v. Wheeler*, 221 F.3d
1030, 1034 (7th Cir. 2000) (holding that failure to exhaust administrative remedies under PLRA
requires dismissal but does not "depriv[e] the district court of subject-matter jurisdiction").

the False Claims Act's partial assignment to *qui tam* relators of the Government's claims does not impinge on the Executive Branch's "Take Care" constitutional responsibilities, the courts have relied on the Attorney General's "significant control" over any litigation pursued by *qui tam* relators. *Riley v. St. Luke's Episcopal Hosp.*, 252 F.3d 749, 753 (5th Cir. 2001) (en banc). Among these mechanisms of control are the Government's "unilateral power to dismiss" any *qui tam* action notwithstanding any objection by the *qui tam* relator, its authority "to veto settlements" by a *qui tam* relator whether or not it has intervened, its ability to intervene for good cause and take over primary responsibility for a case that it has originally declined to pursue, and its ability to change the forum for resolution of the underlying claim by "pursu[ing] alternative remedies" elsewhere. *Id.* at 753-54. The Act also provides procedural mechanisms for the exercise of this control function, including service of copies of all pleadings and transcripts on the Government in cases in which it has not intervened, and stays of discovery that could interfere with the Government's separate investigation or prosecution of a case arising out of the same facts. *Id.* at 754.

The statutory authority for these central mechanisms is grounded in the principle of law that decisions not to prosecute, "which is what the government's judgment [] amounts to" when it decides to dismiss a *qui tam* case, "are unreviewable." *Swift v. United States,* 318 F.3d 250, 252 (D.C. Cir. 2003). Such dismissals at the outset of the case, before a defendant has answered, said the court in *Swift*, are similar to a Rule 41(a)(1)(i) dismissal, which "is not subject to judicial review." In a later decision, the D.C. Circuit also held that such decisions are unreviewable even after the defendant has been served. *Hoyte v. American Nat'l Red Cross*, 518 F.3d 61, 65 (D.C. Cir. 2008). [4] Analytically, the Government's nonreviewable ability either to permit a *qui tam*

_____

[4] While there is no conflict in the case law as to the government's unfettered discretion to dismiss a case brought by a relator prior to service of the complaint upon the defendant, the

case to continue or to dismiss it at the outset of any *qui tam* case is no different from the Government's ability to decline to permit an anti-parasitism challenge to such a case to go forward. The anti-parasitism challenge is being made on the Government's behalf – what is being litigated is whether the Government already had sufficient information in its possession such that the Government already was pursuing, or was likely to pursue the case on its own initiative. It is the Government that, as a matter of prosecutorial discretion, should be able to say whether the courts should use precious time and resources to determine whether a case is parasitic vis-à-vis the Government. The Government's ability to decide that a parasitism challenge should not be permitted is no different from a Government decision to decide to prosecute a case in the first instance, a decision which is clearly nonreviewable. Nor is it any different analytically from its routine decisions to allow *qui tam* cases to go forward by declining to dismiss them, which is also, under the better reasoned decision, unreviewable except in rare instances. *Swift, supra; Hoyte, supra.*

The requirement that Select Medical fulfill the type of statutory condition precedent here before being able to mount this type of anti-parasitism defense, moreover, has never been viewed as interfering with the jurisdiction of the federal courts. Tax refund suits, for example, are routinely dismissed when the plaintiff has failed to comply with a condition precedent that the plaintiff have paid all assessed tax liability before s/he may commence the suit. *E.g., Rocovich v. United States*, 933 F.2d 991, 993 (Fed. Cir. 1991). Actions by the EEOC are routinely dismissed for failure to comply with statutory conditions precedent, for example, the requirement that the

---

Ninth and Tenth Circuits have stated that if the government seeks to dismiss a *qui tam* case after the defendant has been served, the government may do so upon a showing that the dismissal is rationally related to a legitimate government interest. *United States ex rel. Sequoia Orange Co. v. Baird-Neece Packing Corp.*, 151 F.3d 1139, 1147 (9th Cir. 1998); *Ridenour v. Kaiser-Hill Co.*, 397 F.3d 925 (10th Cir.), *cert. denied*, 546 U.S. 816 (2005). We believe that *Hoyte* is the better reasoned of the opinions on this issue.

EEOC attempt to negotiate a conciliation agreement before suing a defendant. *EEOC v. CRST Van Expedited, Inc.,* 774 F.3d 1169, 1174 (8th Cir. 2014), *vacated and remanded on other grounds*, 136 S. Ct. 1642 (2016); *EEOC v. Container Corp. of Am.*, 352 F. Supp. 262, 266 (M.D. Fla. 1972) (same). Statutory notice conditions precedent are routinely enforced against environmental plaintiffs requiring dismissal of their suits. *E.g.*, *Friends of Animals v. Ashe,* 808 F.3d 900, 902 (D.C. Cir. 2015) (plaintiff's failure to comply with statutory condition precedent in the Endangered Species Act requiring notice to the government required dismissal of suit); *Environmental Integrity Project v. United States EPA*, ___ F.Supp. 3d ___, 2015 WL 7737307 *4 (D.D.C. Dec. 1, 2015) (failure to comply with statutory condition precedent of notice under Clean Air Act compelled dismissal of suit). Title VII plaintiffs routinely have their cases dismissed for failure to obtain a right to sue letter from the EEOC, a statutory condition precedent. *E.g.*, *Hladki v. Jeffrey's Consolidated, Ltd.*, 652 F. Supp. 388, 393-94 (E.D.N.Y. 1987). Failures to comply with state statutory conditions precedent are routinely enforced in diversity cases to require dismissal. *E.g.*,  *Flotemersch v. Bedford County Gen'l Hosp.*, 69 FRD 556, 557-58 (E.D. Tenn. 1975) (failure to comply with state statutory condition precedent in diversity malpractice case). Where a showing has been made that the statutory condition precedent was not met, the party asserting the right may not go forward until the condition is met. Enforcing these types of statutory pre-conditions has never been found to interfere with the Article III judicial power.

For these reasons, every court to consider the Government's exercise of its veto authority under the revised public disclosure bar has upheld that authority, and none has found that it implicated any constitutional concerns. In *United States ex rel. Szymoniak v. American Home Mortgage Servicing Inc.*, 2014 WL 1910845 *1 (D.S.C. May 12, 2014) (Attachment B), the

court said that once the government submits a notice, "the court cannot dismiss" the relator's case on public disclosure grounds. In *United States ex rel. Berntsen v. Prime Healthcare Services, Inc.,* No. 11-CV-8214 PJW, Slip Op. at pp. 5-6 (C.D. Cal. Nov. 20, 2014) (Attachment C), the Court stated that the filing of a notice by the Government precludes any argument that the Court "may still [dismiss the action] in its discretion" over the Government's objection. In *Mazza v. Miami-Dade County*, No. 10-24546-CIV-Hoeveler, Slip Op. at 5 (S.D. Fla. Aug. 12, 2013) (Attachment D), the court said that upon filing of the Government's opposition to dismissal, "the Court's directive is clear—the Defendants' motion to dismiss on this ground must be denied." And in *United States ex rel. Baker v. Community Health Sys*., 2014 WL 10212574 *25 (D.N.M. May 16, 2014) (Attachment E), the court said that "the Government's opposition precludes application of the public disclosure bar." *See also United States ex rel. Griffith v. Conn*, 2015 WL 779047 *11-12 (E.D. Ky. Feb. 24, 2015).

While the False Claims Act provides that defendants may pursue dismissals of parasitical suits, they must first fulfill a statutory condition precedent: that the Government agrees that the suit may be parasitical and does not object. In this case, the condition precedent has not been fulfilled. The Government does object. Select Medical is maintaining here that it can force this Court to consider whether the instant case is parasitical as to the Government over the Government's legitimate statutorily-based position that the case should be permitted to go forward. This argument should be rejected.

II.     THE NEED FOR GOVERNMENT ACQUIESCENCE AS A CONDITION PRECEDENT TO ANY PUBLIC DISCLOSURE MOTION RAISES NO NON-DELEGATION ISSUES

Select Medical also argues that the Government's statutory gatekeeper role under the amended section 3730(e)(4) should be judicially modified to include a full adversarial process

between the Government and a defendant as to whether a *qui tam* case is parasitical vis-à-vis the Government, based on the non-delegation doctrine. As a matter of safeguarding the "integrity and maintenance of the system of government ordained by the Constitution," the Congress "generally cannot delegate its legislative power to another Branch." *Mistretta v. United States*, 488 U.S. 361, 371-72 (1989).

There is no delegation of legislative authority here, and therefore no non-delegation doctrine infirmity. Congress is the entity that made the legislative choice in this case: Congress is the entity that decided to make the applicability of the public disclosure bar conditional on the lack of objection by the Government. The Government is making its own decision whether to object, but the fact that its decision affects how a provision applies does not make the decision legislative in nature. No court to our knowledge has ever found that this type of decisionmaking within legislative parameters that have been narrowly defined by the Congress constitutes any type of legislative delegation of authority.

Moreover, even assuming arguendo that the Government's rights under the public disclosure bar constitute a legislative delegation, Congress has often given the President or the Attorney General statutory authority to make decisions, like this one, that are peculiarly within their expertise without such authority in any way implicating the non-delegation doctrine.

In the first case involving a challenge to the President's actions on non-delegation grounds, *Marshall Field & Co. v. Clark*, 143 U.S. 649, 692-93 (1892), the Court found no delegation problem with an act authorizing the President to suspend tariff provisions for duty-free imports if, in the President's discretion, s/he determined that such action was necessary to ensure reciprocal trade. As long as Congress has created an "intelligible principle" to which the Executive Branch is directed to conform, there is no non-delegation problem presented. *J.W.*

*Hampton Jr. & Co. v. United States,* 276 U.S. 394, 409 (1928). In *J.W. Hampton,* the intelligible principle was that the Executive Branch was authorized to act when it determined that tariffs were unequal between the U.S. and a foreign country. In this case, the intelligible principle is that *qui tam* cases brought on behalf of the Government that are not parasitical should be permitted to go forward.

There are only two cases in which the Supreme Court has ever found a delegation problem: in one, the President was authorized to make certain conduct criminal without any guiding principle, *Panama Refining Co. v. Ryan*, 293 U.S. 388, 415 (1935), and in a second, the President was authorized to "make whatever laws he thinks may be needed or advisable for the rehabilitation and expansion of trade or industry" – essentially to regulate the entire economy – without any guidance. *A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495, 537-38 (1935). As most recently stated by the Supreme Court in *Whitman v. Am. Trucking Ass'ns* 531 U.S. 457, 474 (2001), these two decisions establish the "outer limits of [the] nondelegation precedents," which is that Congress cannot "confer[] authority to regulate the entire economy on the basis of no more precise a standard than stimulating the economy."

Notably, even delegations that are close to *Panama Refining* and *Schechter Poultry*– ones that are a far cry from any even arguable delegation here in terms of scope and impact -- have routinely been upheld. For example, in *Yakus v. United States,* 321 U.S. 414, 423 (1944), the Court upheld a delegation by Congress to an executive official of power to fix commodity prices at a "generally fair and equitable level." In *American Power & Light Co. v. Securities & Exchange Comm'n*, 329 U.S. 90, 97, 104 (1946), the Court upheld a delegation to the SEC to prevent companies from "unduly or unnecessarily complicat[ing] the structure" of the holding-company system or "unfairly or inequitably distribut[ing] voting power among security holders."

The SEC had adequate guidance based on "policy declarations set forth by Congress" and the larger context and purpose of the underlying statute. As stated in *Whitman,* 531 U.S. at 474-75, the Court has "almost never felt qualified to second-guess Congress regarding the permissible degree of policy judgment that can be left to those executing or applying the law." A delegation will be constitutionally sufficient "if Congress clearly delineates the general policy, the public agency which is to apply it, and the boundaries of this delegated authority." *Mistretta,* 488 U.S. at 372-73.

All of these conditions are present here: Congress has clearly delineated its concern that the only *qui tam* actions that should be eligible for dismissal based on the grounds that they are parasitic vis-à-vis the Government are ones that the Government determines to be parasitic. It has stated that the Government is in the best position to make these types of determinations because, in general, the information necessary to make the determination as to whether the Government is already pursuing or is likely to pursue a matter, is peculiarly within the knowledge of the Government. It is entirely reasonable for Congress not to have wanted defendants to derail the merits of a *qui tam* proceeding with an extended foray into the reasons for the Government's decision to object to a defendant's public disclosure motion (undoubtedly accompanied by the defendant's request for extended discovery into the government's decision-making process). The boundaries of the delegated authority are here well within the usual unreviewable functions of the Executive Branch to make decisions as to what types of actions it will pursue or will allow private parties to pursue on its behalf. In short, the non-delegation challenge to section 3730(e)(4) should be rejected.

III.     NO DUE PROCESS INTERESTS ARE AT STAKE HERE

In order to make out any colorable claim to violation of procedural due process rights, Select Medical must show a life, liberty or property interest that is protected by the Due Process Clause. It has made no such showing. As stated above, the original congressional bills considered by Congress in 2007, 2008 and 2009 would have eliminated any right of any defendant to make an anti-parasitism argument in a *qui tam* case, limiting those motions to the Government since these motions are vindicating the government's interests. Surely Select Medical would have had no argument that it had been deprived of a life, liberty or property interest had Congress adopted one of these bills. The bill signed into law in fact gives Select Medical a greater role than originally contemplated – *i.e.*, the ability to pursue an anti-parasitism motion as long as the Government does not object to the motion.

Select Medical cites no authority, and we are aware of none, in which any court has found that liberty or property interests are implicated for purposes of the Fifth or Fourteenth Amendments to the Constitution where Congress has modified a defense that is entirely a creation of federal statute. As a general matter, Select Medical must have an entitlement that stems from some source other than the federal statute itself to claim that it has been deprived of a liberty or property interest. *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005) (declining to find any constitutionally protectable liberty or property interest in enforcement of state court restraining order); *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577 (1972) (State actor's decision not to rehire nontenured professor implicates no liberty of property interests that are constitutionally cognizable). As a general matter, if government officials have the statutory discretion to grant or deny a right, that right cannot be a constitutionally protectable liberty or property interest. *Kentucky Department of Corrections v. Thompson,* 490 U.S. 454,

462-63 (1989).  Given that, when Select Medical is permitted to move to dismiss it is making an

argument about parasitism vis-à-vis the Government, there is no unfairness in allowing the

federal government to decide whether Select Medical should be so authorized. In sum, no

procedural due process concerns are implicated by the federal government's greater role under

the 2010 amendment.

## CONCLUSION

For all of the above reasons, this Court should reject the various constitutional challenges

raised by Select Medical to the statutory condition precedent contained in section 3730(e)(4) that

the Government must acquiesce in any defendant motion to dismiss based on this provision. The

Court should implement the Government's notice, just as every court to consider the issue has

done, by striking Select Medical's motion. The United States takes no position on the remaining

grounds asserted for dismissal in Select Medical's Motion to Dismiss.


Dated: June 10, 2016                              Respectfully submitted,

                                                  BENJAMIN C. MIZER
                                                  Principal Deputy Assistant Attorney General

                                                  JOSH J. MINKLER
                                                  United States Attorney

                                                  *s/ Shelese Woods*
                                                  By: SHELESE WOODS
                                                  Assistant United States Attorney

                                                  MICHAEL D. GRANSTON
                                                  ANDY MAO
                                                  VANESSA I. REED
                                                  Attorneys Civil Division
                                                  United States Department of Justice
                                                  P.O. Box 261, Ben Franklin Station
                                                  Washington, D.C. 20004
                                                  (202) 514-7372
                                                  Counsel for the United States

25

## CERTIFICATE OF SERVICE

This is to certify that I have served a copy of the foregoing upon the Parties herein, by filing a copy through the Court's CM/ECF system, which will deliver a copy to the following counsel of record on this 10th day of June, 2016.

Colette G. Matzzie
Larry P. Zoglin
PHILLIPS & COHEN, LLP

Lane Siesky
Siesky Law Firm, PC

Karl A. Thallner, Jr.
Andrew C. Bernasconi
Thomas Howle Suddath , Jr.
Reed Smith LLP

Steven A. Hunt
INDIANA ATTORNEY GENERAL'S OFFICE

Myra Consetta Selby
Bradley L. Williams
ICE MILLER LLP

James P Holloway
S. Craig Holden
OBER KALER GRIMES & SHRIVER, PC

Michael C. Keating
KEATING & LAPLANTE
Old Post Office Place

J. Richard Kiefer
Briana Lynn Clark
BINGHAM GREENEBAUM DOLL LLP


*s/ Shelese Woods*
Shelese Woods
Assistant United States Attorney
United States Attorney's Office
10 W. Market, Suite 2100
Indianapolis, Indiana 46204-3048
Telephone: 317-226-6333
Facsimile: 317-226-5027
shelese.woods@usdoj.gov